The next case, number 221284, Zia Mara-Santiago v. Municipality of Utuado. At this time, would counsel for the appellant please introduce himself on the record to begin. Once again, good morning, Your Honors. All the officers of the court. Kenneth Colon, representing Plano faculty. Good morning. I would like to reserve two minutes for rebuttal. You may. Okay. I lay my trust before this court so justice will be served. I will say this statement. I'm aware that I have the burden to establish that the district court abused its discretion when they denied the preliminary injunction in this case. And I think I will comply with that standard. Plano was dismissed from her job to a letter dated February 27, 2020. Her dismissal was effective in March 5, 2020. A few days later, in a radio interview in a local, and I say local from the town, WUPR station, the mayor said that the reason for which he dismissed Plano was because she was part of a group that carried the bags for Ernesto Di Sarri. Ernesto Di Sarri was the prior mayor. Counsel, why didn't your, why doesn't your client, assuming that there's merit to her lawsuit, why doesn't she have an adequate remedy at law for money damages? Because her expectation in employment was only for the duration of that one-year contract, which is easily reducible to a dollar figure. Well, the expectation is, in that sense, is for purposes of the due process claim. However, this court has adjudicated that even transitory employees are entitled to a protection under the First Amendment. And that goes beyond the extent of the contract. And I make reference to the case of Gonzalez de Blasini versus Department of the Family. In other words, even if you have a transitory appointment that is passed for one year, even if that one-year elapses and you're not renewed because of political reasons, you have a cause of action under the First Amendment. And that's different from the due process claim. So I think that in that sense, the exposure for liability was even greater. Not only that, but this court has adjudicated that the violation of a constitutional right is irreparable harm. And that conclusion was reached by the district court to the report and recommendation issue by the magistrate judge, which is the ground of this appeal. Because, of course, eventually the district court adopted the report of recommendation, but that's another story. And the court established that… That still doesn't answer why money damages wouldn't be sufficient as opposed to equitable injunctive relief. I'm saying, Your Honor, because in the case of Fortuno, and I'm sorry, there are several cases that says that the mere violation of not only due process, but of a First Amendment claim, it's irreparable harm. So if I can establish that there was a political discrimination claim, I can establish that it was irreparable harm and I'm entitled to a preliminary injunction. Not only to the money damages, I understand that usually the exposure is back pay, damages, you know, personal damages. But in this case, there was a violation of a First Amendment right. Excuse me, counsel, just so I understand how you've responded to Judge Thompson's question. Are you acknowledging that with respect to the due process claim, your argument that the constitutional claim itself is the irreparable injury, that does not apply to the due process claim? Because it does seem to me that we have indicated there that where money damages would be available to address the injury, that the constitutional violation itself is not the injury. In the First Amendment, that's different. But do you acknowledge there was a difference between the two? Your Honor, I don't. To be frank, Your Honor, I think it's the same situation because a due process violation is a constitutional violation. In the case law sense, I think there's a case called Bacariatres Monjitas versus Secretary of Agriculture. And in that case, the court provided that violation, even a violation of an interstate commerce clause claim is a constitutional violation and it constitutes irreparable harm. So by the same token, I think that the violation of the due process claim as a constitutional right can constitute also irreparable harm. Okay. So on the First Amendment claim, I mean the, you know, the district court. I'm sorry. I'm sorry. I'm sorry. Excuse me. On the First Amendment claim, the district court engaged really in some fact-finding when it concluded that you had not established that your client's political affiliation was a substantial motivating factor in the decision to dismiss her. The court took the view that the mayor and those making the decision concluded that she did not meet the qualifications for the job. And in addition, based upon an interview with her, he felt she confirmed, he concluded she was not qualified for the job. As fact-finding, if you will, what's erroneous about that? First of all, I think that that conclusion was a conclusion of law. He said that she doesn't comply with the minimum requirements or that the appointment was illegal. Right. As she provided. That's a conclusion of law. Okay. And this court is entitled to review that de novo. Okay. I got several things to say about that. First of all, the reason for which she said that the appointment was illegal was because the, how do you call that, convocatoria, the announcement, the employment announcement, required that the applicant must have three years of experience in a health program as minimum requirement in command of the English language. The court held that she only had 17 months of experience in the Head Start program. And that was not enough. However, there was sample testimony from the human resources officer of the Head Start program where he explained that when she was interviewed by the parents' committee, they took into consideration that she had six years directing the Department of Ornate and Landscaping and Recycling, in which she had an opportunity to direct a whole program, including the supervision of 23 employees. And the court decided that that could be, I'm sorry, not the court, but the parents' committee that was the one that recommended her appointment, decided that there was a substitution or a make-up of that requisite in particular. Besides, if you see the two contracts that were signed by the parties, one dated July 30 that was effective in August, and the other one was signed in December 30 and was effective in January 1, 2021, there's a clause that says that the applicant complies with the requisite for the position. The court, I'm sorry, yes, the district court in the report of recommendation says that according to the contract, plaintiff certified that she complied with the requirements. But if you see the contract, which is marked as an exhibit, that's not exactly correct. What actually happened was that both parties agreed that she complied with the requirements. And there's something very interesting here, Your Honor. That situation goes into the mental health defense, as we know. And there's a very interesting comment in the case of Reyes-Cargona versus Puerto Rico Highway Authority, which is quoted in the brief, and it's also, I think it's quoted in the report of recommendation, in which Judge Hawkins, sitting by designation, makes an analysis between the distinction of a mouth-healthy defense, according to the Constitution, and the requirements of employment discrimination under Title VII, or employment discrimination in general, according to the McDonalds-Douglas versus Freed standard. Under McDonald-Douglas, we got pre- You're running over your time. Could you wrap it up? Your time is, you're well over your time. Okay. I'm just going to say that under mouth-healthy, as opposed to McDonald-Douglas, under mouth-healthy, the defendant, there are two problems. The establishment of the constitutional violation, et cetera, and then the non-discriminatory reason. Under the mouth-healthy, the defendant has a burden of proof, as opposed to a burden of frustration under McDonald-Douglas. And we understand that defendant did not comply with that burden of proof, taking into consideration all the other elements of the case and all the other facts, which I would be glad to explain, but I'm out of time. Thank you. Thank you, counsel. I appreciate you, Your Honor. And once more, I lay my trust upon this court, so justice will be served. Thank you. At this time, would counsel for the affilee please introduce himself on the record to begin? Good morning, Your Honors. Eliezer Aldarondo, on behalf of Appalachian Municipality of Potoado. May it please the Court. Your Honor, the District Court did not abuse its discretion. The Court conducted a very thorough factual analysis as to plaintiff's first amendment, political discrimination claim. A due process claim, the first amendment discrimination claim is, in my view, plaintiff's stronger case before this Court. As Justice Thompson pointed out, plaintiff held transitory employment and had not established irreparable injury. In the case we cited on page 16 of our brief, case from this Court, Town of West Newbury, this Court held that irreparable injury is an element of a preliminary injunction involving due process. That is not the case, of course, in the case of first amendment. But like I said, the District Court engaged in a very thorough factual analysis. The Court reviewed the parties' submissions. Can I ask you this? Yes. Can you explain whether the termination here followed the usual protocols? And then related to that, was there a violation of Ordinance 29, which I think Ms. Santiago alleges? And if there was, does that change the outcome here or not? Your Honor, in terms of protocols, the municipality, the mayor made the recommended decision of terminating plaintiffs around early February 2021. That decision was submitted to the committee. In our view, it doesn't matter whether the municipality broke protocol or did not for purpose of a first amendment claim unless causation is established. There's no evidence on the record that the breaking of protocol or anything along those lines responded to plaintiff's political affiliation. The record rather establishes a new administration that comes in. Well, what about the comments he made on the radio? And I understand that your position is that he was talking about a lot of people, but he called her by name. Yes, Your Honor, that is my understanding as well. The District Court examined that interview. But he called her by name. There were different matters discussed in that interview. They discussed her termination and what the mayor said in that termination was precisely the reasons why he terminated her. That she was not, that she did not know or was not aware of basic aspects of the Hester operation. Let me ask you that because according to the record, there was a meeting in which employees of that agency, including the plaintiff here, were questioned. And the brief makes a big deal out of her being asked seven questions that she was unable to answer. Is there anything in the record that suggests that the questions that were presented to her would have been part of her duties as the Deputy Director? In other words, were the questions aligned with whatever her resume or job qualifications were? My understanding is that it is. The District Court, in my recollection, made a point about that. Her duties required her to substitute the director whenever necessary. And as the director of the Hester program, at the very least, she should have known basic operational matters. And the questions were actually directed about basic operational program matter.  And more importantly, the District Court went far and beyond the causation prong to even inquire as to the reasons for her termination. Probed her on that and made a ruling on the record that she failed to answer or respond to the most basic questions regarding the operation of the program. So even if they weren't within the purview of her duties, then we still come back to the issue of causation. And whether her termination or whether that decision was made because of her political affiliation. And there's no evidence on the record that that were the case. This is not the case like other cases before the court, I'll give it. There was temporal proximity, but there's not a case like other cases where there's mass layoffs, substitutions. In terms of one political party comes in and substitutes everybody with members of their own affiliation. There were no political comments. There was nothing along those lines. Even that radio interview when he speaks about her termination, Your Honor, he's referring, all he gives is the very reasons why, in his view, he terminated her. He does go on, like I said before, and discusses other matters. He makes some comments, like Brother Counsel said, about carrying the bags, but that's referring to municipal legislators, members of political body. And I mean, it was an all-encompassing interview, and the district court examined it and made a ruling about it. Not only was the district court's ruling thorough, but the district, the magistrate judge, but the district court further reviewed the record, as a whole, and adopted it. So, again, the district court had four days of evidentiary hearings, heard testimony, probe plaintiffs, and not only found that there was no, that concession was lacking, but also found that there were valid reasons for her termination based on the answer she gave on the stand. Counsel, the opposing counsel said that, with respect to whether she was qualified for the job, that's an issue that we reviewed de novo because the district court indicated that, as a matter of law, she was not qualified because, one, she did not have the educational qualifications. And I think district court also concluded that this job was not properly noticed as being available. Is that correct? Was that part of the problem? No. Let's parse that a bit, and thank you for the question, because I think there was a bit of confusion with that comment. Okay. At first, yeah, this court, in my view, this is the same position. I mean, whether the employment is illegal or not is an issue of law that this court can very well review de novo. I agree with that. I also think that this court is in the very same position as the district court in determining whether she complied with the stated requirements of the job. It's a document. It's on the record. Again, in my view, the relevant standard here factors in and requires deference on the district court in this regard, but I think it's fair to say that the court is in the very same position because all it requires is looking at a document and comparing whether the evidence on the record is uncontested and comparing whether she met those requirements. The determination of the district court was that she did not. In my view, that's relevant both for First Amendment and due process claims because it goes to the unhealthy and then it also goes as to whether the employment was, whether she had a property interest or did not. But again, the district court went, analyzed those points, held that she did not meet the requirements, and I think it's uncontested that she did not meet those requirements. Council is trying to make a distinction that was not raised in their objections to the report and recommendation in the court below to make a distinction that somehow, even though she did not meet the requirements because she was eventually hired, her failure to do so somehow, that somehow excuses her failure to comply or meet the requirements because in the end she was hired. I mean, that's not the law. Going back to the Kaufman case in 1988 from this court, appointments in violation of Puerto Rico law do not create a property interest. It has been established time and time again, and the fact of the matter is that she did not comply with those job requirements. Now, with how that affects her political discrimination case, it may go to the unhealthy, but again, before we get there, she has to establish causation. She did not. The district court found she did not. And even as to the unhealthy, what the district court found was that that was one of two factors that could have justified her dismissal or that justified her dismissal. The other factor was her failure to answer the questions of the meeting with the governor, her lack of knowledge of basic head start operations. And again, that was probed on the record, uncontested, and for that reason I don't think the determination based on the requirements somehow affects the due process, the First Amendment claim. If anything, it goes to the due process claim. If anything, in our view, the district court got it right. And if for some reason it did not, that does not justify reversing a preliminary injunction because like Judge Thompson asked, there's no irreparable injury here, which is a requirement of a preliminary injunction in the due process. Do you agree that that issue, the fact that money damages would address the injury, that applies only to the due process claim and not the First Amendment claim? Yes, sir. Do you agree with that? Yes, sir. Okay, thank you. Thank you, counsel. At this time, counsel for the appellant has a two-minute rebuttal. I'm going to go backwards. First of all, regarding the questions that the defendant alleged that she was lacking of knowledge in the meeting that took place in the municipality, the record shows that neither one of the people that were asked questions regarding the subjects of the Head Start program by the mayor and this person called Manuel Mena, none of them answered the questions properly. And regarding the plaintiff, what she said was that the answer to those questions could be answered by the actual director of the department, Mr. Christian, I don't remember his last name, but it's in the record, and he was not around. And she said, I can ask him, and I can bring you the information. The details I'm not going to discuss because I don't have time, but I could. Anyway, the thing is... But his response to that was that your client was expected to step into the shoes of the director in the event of his absence. Is that not supported by the... First of all, she was not appointed director. She was appointed deputy director. Second, at that time, the director was still there, only that he had a quarter with the mayor and he had to report under sick leave and eventually he resigned. So it's unfair, first of all, to require her to know as much as the director at that moment in particular. And second, it's far-fetched to claim that the reason for her dismissal was the lack of knowledge. If you see the letter dated February 27, first of all, no reason was given there. Second, no chance for a pre-termination hearing was given. So I think that this excuse that she had no knowledge of the process for the proceedings and the health care program is a mere pretext. It was not considered, actually. Okay, and then going as to the cost relation. I can explain since the cost relation, the political discrimination, the claims, the mayor and her notice in junior high school, the clobber that they had in August 2020 before the elections in which the mayor accused her that she was committing fraud and that she was on the list of federal government for investigating for fraud, which I understand that was false, but anyway. And then the comment regarding that she was carrying the bags to the mayor, it included other people. He answered in plural, but he answered that question in specific when the interviewer asked him about Suomala. Counsel, just very quickly, there was a testimonial hearing, covered several days. The district court judge heard your client testify, and based on his observation of her testimony, he developed concerns about her qualifications for the job, which echoed what he understood were the concerns of the mayor about her qualifications. So that is a factual determination, is it not? He felt during her testimony that the concerns about her qualifications for the job were justified. Did he not make that finding? First of all, it wasn't the judge. It was the magistrate. It was she. It was the magistrate. I understand. Second, the particular comment is that she noted some sort of lack of knowledge. I agree with that, that she said that. But that was not a fact ground to establish that she did not comply with the requisites of the position. The factual ground or the legal ground was that she did not comply with the requisites in terms of experience in the health care program. So she may understand that the witness, you know, when she was testifying, I don't know, she could be nervous. She could show some kind of confusion in general terms. But from that to conclude that that justified her dismissal is a far-fetched conclusion, Your Honor. And I respect the magistrate judge's perception in that case. But I understand that it was not enough. Thank you. Your time is up.  Thank you, counsel. That concludes argument in this case.